## Lucas v. Commonwealth.

(Decided October 15, 1929.)

D. I. DAY for appellant.

J. W. CAMMACK, Attorney General, and D. C. VEST for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY— Affirming.

Under an indictment charging the appellant, John Lucas, with willful murder of Joe Bates, he has been convicted of voluntary manslaughter and his punishment fixed at two years in the penitentiary.

Appellant was the next door neighbor and friend of the deceased, who kept a general store in a village in Letcher county. The appellant was drunk the evening of the homicide, and the proof of the commonwealth tends to show that he was rather boisterous. About 10 o'clock that night he called Bates from his home to go to the store and get him a bucket of lard. The only eyewitness, Ambrose Smith, testified for the commonwealth that he came up to the defendant sitting on the porch or platform of the store with a bucket of lard and advised him to go on home because he was drunk. About that moment Bates came out on the porch, and as the defendant was fumbling for his pistol he asked Bates where it was, and the latter replied, "I suppose you got it there in your pocket." The defendant found his pistol which had apparently fallen from his pocket, and turned about halfway around, and as he was in the act of falling from the platform the pistol was discharged, the shot striking Bates in the leg above the knee. Appellant jumped and exclaimed, "Lord, Uncle Joe, have I shot you?" and then tried to assist the old gentleman to his home. Bates died of the wound about a month thereafter. Some members of his family testified to having heard several shots fired just before he went out, and detail circumstances tending to show that Lucas had fired them, and also that he had been quarreling with his wife, cursing and threatening to kill Willie Lucas before daylight.

The defendant testified that he first went to the store of Willie Lucas to get some lard, but it was closed. He then started home and somebody threw rocks at him, one of which struck him in the back and knocked him down. He went home and got his pistol for protection, came out and aroused Bates and bought from him a bucket of lard and some cigarette papers, and also got a bottle of tonic

from which he drank. He admitted having drunk home-brew before that time. He came out of the store on the porch and sat down, and his testimony as to what followed is substantially the same as that of Smith. He denied having done the previous shooting and that he had had any quarrels or made any threats.

The only ground for reversal submitted is that the evidence was not sufficient to sustain the verdict. The court gave instructions on murder (qualified by the right of self-defense), voluntary manslaughter based on shooting without malice aforethought and in sudden heat and passion, and also as the result of a reckless, wanton, or grossly careless use or handling of a deadly weapon, involuntary manslaughter, accidental killing, and reasonable doubt.

In felonious homicide there is a gradation of offenses, the particulars of which vary somewhat in the different states. Some jurisdictions classify it as first and second degree homicide, but we have always followed the rule of the common law by dividing homicide into murder, voluntary manslaughter, and involuntary manslaughter. Our statute does not attempt to define either murder or voluntary manslaughter, but only prescribes the penalties therefor. Ky. Stats., secs. 1149, 1150. We, therefore, look to the common law for the definitions which are used by the courts of this state. Roberson's Criminal Law, sec. 347. Different expressions have been used in our reports to define voluntary manslaughter, although all definitions are essentially the same. It has often been stated, as in Smith v. Commonwealth, 133 Ky. 536, 118 S. W. 368, 369:

> "It is essential to the commission of voluntary manslaughter that the homicide should have been willfully and intentionally committed (i. e., in a sudden affray or in sudden heat and passion), or under such circumstances as to strike one at first blush as so reckless and wanton as to be felonious, though apparently not intended by the perpetrator." See, also, the late case of Jones v. Commonwealth, 213 Ky. 356, 281 S. W. 164.

We are concerned in this case with manslaughter as the result of felonious negligence, for it is apparent the accused was found guilty under the instruction covering it. In many cases this court has declared that where one

kills another by the wanton, reckless, or grossly careless use of firearms the offense is voluntary manslaughter, although he had no intention to kill. As stated in Ewing v. Commonwealth, 129 Ky. 243, 111 S. W. 352, 354, 33 Ky. Law Rep. 749:

"These opinions rest on the common-law principle that a man must be held to intend the necessary consequence of his act. In 1 Bishop on Criminal Law, sec. 313, it is said: 'There is little distinction except in degree between the will to do a wrongful thing and an indifference whether it is done or not. Therefore, the carelessness is criminal, and within limits supplies the place of affirmative criminal intent.' When we do not apply the doctrine of implied malice, and submit the question of malice to the jury, it must follow that, if the jury find the act was done without previous malice, they may find that the act was voluntary where it was done so recklessly or carelessly as to show an indifference to consequences. To hold otherwise would be to ignore the rule that he who acts recklessly is in law presumed to intend the consequences of his act. He who puts a loaded pistol at the head of another, and pulls the trigger, knowing the danger attending the act, cannot be heard to say he intended no harm. 1 Greenleaf on Evidence, sec. 18."

So it may be said that one who puts a loaded pistol in his pocket and goes about in a drunken, maudlin condition, with full knowledge of the danger attending that act, cannot be heard to say that he intended no harm and therefore ought to go acquit. This case has its analogue in Pash v. Commonwealth, 146 Ky. 390, 142 S. W. 700, in which a drunken man, recklessly handling a loaded pistol, killed his own brother. See also Montgomery v. Commonwealth, 81 S. W. 264, 26 Ky. Law Rep. 356; Davis v. Commonwealth, 193 Ky. 597, 237 S. W. 24, 23 A. L. R. 1551; Davis v. Commonwealth, 204 Ky. 809, 265 S. W. 316; Commonwealth v. Matthews, 89 Ky. 287, 12 S. W. 333, 11 Ky. Law Rep. 505.

The ground upon which the appellant bases his claim for reversal cannot be sustained, as the evidence warranted the verdict.

Judgment affirmed.